UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CURTIS JOHNSON,
    *Plaintiff*,

v.

CONNECTICUT DEPARTMENT OF
ADMINISTRATIVE SERVICES BUREAU
OF ENTERPRISE SYSTEMS AND
TECHNOLOGY, *et al.*,
    *Defendants*.

No. 3:17-cv-00901 (JAM)

**ORDER RE MOTIONS TO DISMISS**

Plaintiff Curtis Johnson is an employee of the Connecticut Department of Administrative Services Bureau of Enterprise Systems and Technology (the "Department").[1] He has filed this action for race discrimination, retaliation, and a hostile work environment against the Department as well as his two supervisors, James Wells and David Ruiz. Defendants have now moved to dismiss the complaint. For the reasons set forth below, I will grant in part and deny in part the motions to dismiss.

**BACKGROUND**

The following alleged facts are accepted as true solely for purposes of this motion to dismiss that challenges the adequacy of the pleadings in the complaint. Plaintiff began working for the Department's Bureau of Enterprise Systems and Technology in July 2007 with the Operations/Infrastructure Support Team. Plaintiff has a bachelor's degree and a master's degree. He served as the backup to his supervisor, defendant James Wells, and he was one of two black

---

[1] Plaintiff has named "Connecticut Department of Administration Bureau of Enterprise Systems" as a defendant, when in fact the defendant department's name is Connecticut Department of Administrative Services Bureau of Enterprise Systems and Technology. The Clerk of Court is requested to amend the docket case caption to reflect the defendant department's correct name.

employees supervised by Wells. Additionally, plaintiff suffered from sleep apnea and had a medical certificate entitling him to use sick time to come to work late.

In order for plaintiff to serve in his role as backup, Wells was supposed to provide certain training to plaintiff. But Wells never provided this training, rendering plaintiff not fully capable of fulfilling his role. For six years, Wells frustrated plaintiff's ability to fulfill his role by withholding "mission critical information and processes." Doc. #1 at 2 (¶ 11). Plaintiff also perceived Wells to be disrespectful to him in the workplace. Wells frequently told plaintiff to stop looking at his phone or not to take too long in the bathroom, while not treating other employees in this fashion.

On August 23, 2012, Wells called plaintiff's personal cell phone while he was on vacation. Wells began to "berate" plaintiff about the completion of documentation related to work he completed with Arnold Correa. *Id.* at 3 (¶¶ 16-17). Plaintiff texted defendant David Ruiz, the Data Center Manager, to inform him that Wells was harassing him while on vacation. When he returned from his vacation, plaintiff discussed the incident with Ruiz. After Wells was confronted, he demanded that plaintiff cease wearing headphones in his work center while others continued to use them.

In October 2012, plaintiff applied for a position in the Enterprise Planning and Architecture Division, a position for which he was qualified. Although plaintiff had three of the four preferred skills for the position, plaintiff was told he would not be interviewed because he possessed none of the preferred skills. Many of the employees that were selected did not possess more of the preferred skills required for the job than plaintiff possessed. According to plaintiff's administrative complaint that he filed before the Connecticut Commission on Human Rights and

Opportunity (CHRO), the position was filled by a black male with a doctorate degree in IT security. Doc. #15-2 at 5.[2]

One day in January 2013, plaintiff called into the command center at 7:00 a.m. to advise that he would be using three hours of paid leave that day. Despite the fact that plaintiff had taken leave at the last minute before, Wells approached plaintiff to demand that he inform Wells one day ahead of time when taking paid time off. Wells did not require this of any other employee in the data center.

On September 4, 2013, plaintiff briefly detoured into the office library to greet some co-workers. While there, he spotted a newspaper that contained an article about someone he knew personally. Wells then passed by and scolded plaintiff in front of his co-workers for looking at the newspaper.

Following this incident, plaintiff notified a union steward about his problems with Wells and then filed a formal complaint against Wells with the human resources department ("HR"). After plaintiff started lodging his complaints with the union and HR, Wells ceased speaking to plaintiff altogether, restricted communication to only e-mail, and began to report daily tasks to Arnold Correa, an employee who worked under plaintiff. One week after filing his complaint with HR, plaintiff learned that HR was working with Affirmative Action on the matter.

On September 18, 2013, plaintiff met with Lorraine Vittner from HR and Eric Lindquist. He described his complaints about Wells and explained that his role as backup to Wells was mandated by the Data Center Manager. Plaintiff elaborated that he received inadequate training to fulfill his role as compared to when he held a similar position elsewhere. When asked by

---

[2] The Court may take judicial notice of plaintiff's CHRO complaint. *See, e.g.*, *Robinson v. Dep't of Motor Vehicle*, 2017 WL 2259767, at *3 (D. Conn. 2017); *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 273 n.33 (D. Conn. 2010).

Lindquist, plaintiff said he believed that Wells was treating him in this manner because, among other reasons, he is black. Plaintiff described Wells's conduct toward him as "prejudicial treatment and harassment" and used the term "berate-berating," giving the example of the phone call on vacation to illustrate its meaning. Doc. #1 at 7 (¶¶ 37-38). Plaintiff informed Lindquist that he would rather report to Ruiz and would like the "knowledge transfer," which is a set of training meetings to help plaintiff fulfill his job role. *Id.* at 7-8 (¶¶ 38, 41).

Plaintiff met again with Vittner on September 30, 2013. At that meeting, Vittner informed him that plaintiff would continue to report to Wells, but Ruiz would coordinate meetings between plaintiff and Wells while Vittner would meet with plaintiff biweekly to monitor the work relationship. Additionally, Vittner told plaintiff that Wells would take supervisor training classes. Vittner also informed plaintiff that Wells had complained to her about his inability to find plaintiff at certain times.

Starting in October 2013, seven "knowledge transfer" meetings were held with plaintiff, Ruiz, and Wells—one in October, three in November, two in December, and one in March 2014. For his part, Wells continued to meet with Vittner to satisfy monitoring requirements imposed by HR, but he did not attend any formal supervisor training.

At one of the "knowledge transfer" meetings in December 2013, Ruiz and Wells required plaintiff to notify them whenever he planned to come in late using sick time afforded him by his medical certificate. In April 2014, Wells modified this directive to require plaintiff to e-mail him whenever he arrived late to work irrespective of the type of leave to be used. No other employee supervised by Wells was required to give such notice.

In January 2014, at Ruiz's request, Wells invited plaintiff to attend systems assurance meetings on certain scheduled days. Plaintiff regularly attended these meetings for three months

until one day he arrived for the meeting while an earlier meeting that had run late was still proceeding. Wells informed plaintiff that he was in the wrong meeting, but plaintiff stayed in the meeting. Thereafter, plaintiff was no longer told when the systems assurance meetings were held.

On February 13, 2014, plaintiff left work at 8:30 a.m. because the Governor of Connecticut closed the state and ordered non-essential personnel to remain at home. On plaintiff's timesheet, Ruiz coded the absence as "unauthorized leave" resulting in a garnishment of 6.5 hours of pay. Because of this action, plaintiff's union filed a grievance on his behalf. In April 2014, as part of the negotiations between the union and HR to resolve the matter, HR proposed, among other requirements, that plaintiff withdraw all harassment complaints filed with HR, the union, the CHRO, and the U.S. Equal Employment Opportunity Commission (EEOC) in exchange for being "made whole" and a restoration of the garnished wages. *Id.* at 10 (¶ 51).

Wells continued to frustrate plaintiff's ability to fulfill his duties. For example, on April 25, 2014, Ruiz asked plaintiff to assist a co-worker on a project, but plaintiff was completely unfamiliar with the project because Wells had not informed him about it. On April 29, plaintiff informed Vittner that Wells was marginalizing plaintiff, giving all relevant information to Correa and not speaking to plaintiff at all. *Ibid.* (¶ 55).

Plaintiff filed his complaint with the CHRO on June 4, 2014. Doc. #15-2 at 1. On October 1, 2014, plaintiff was given a performance review that indicated he had "regressed" in "quantity of work." Doc. #1 at 14 (¶¶ 74-75). Plaintiff inquired with Ruiz why he had received a negative evaluation. Ruiz described three separate incidents of deficient performance, all three of which plaintiff disputed as legitimate grounds for the negative performance review.

Absences and tardiness continued to be a source of discord between plaintiff and Wells. On two occasions, once in February 2014 and once in January 2015, plaintiff was late on

mornings it had snowed. On the earlier occasion, Wells tried to force plaintiff to use personal leave to cover the time missed, but backed off when a co-worker corroborated plaintiff's explanation that the highway was shutdown. On the latter occasion, Wells again asked plaintiff to use his personal time but did not make the same request of a white co-worker who had also arrived late.

The marginalization and discord continued in February 2015. For example, on February 6 and 11, Wells went on a job run to Groton for the day without telling plaintiff or instructing him as to what should be done that day. On February 17, plaintiff informed a union representative that he went to the emergency room and missed a heart doctor appointment after being threatened by a supervisor.

In May 2015, Wells accused plaintiff of removing leave paperwork from his desk, which plaintiff denied. Wells also denied plaintiff's formal request to use unpaid leave for July 1-2, 2015, despite the fact that the vacation request had been approved in April. In June 2015, Wells told plaintiff there was a problem with a certain delivery. When plaintiff asked what the problem was, Wells "snapped" back an unspecified response to plaintiff. *Id.* at 18 (¶ 95).

Finally, in April 2017, plaintiff requested Ruiz to sign off on his mentorship program application. Ruiz declined, citing limited resources. Whenever plaintiff sought to participate in the mentorship program, Ruiz or Wells either refused to approve the mentorship application or, if the application were approved, refused to set a mentoring schedule with him. Other non-black employees received mentoring that was denied to plaintiff.

Plaintiff filed this action on June 1, 2017. The complaint has seven counts. Counts One through Three allege claims against the Department as plaintiff's employer for discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act.

Counts Four through Six of the complaint allege parallel claims against the individual defendants under 42 U.S.C. § 1983. Count Seven alleges a claim against the Department under the Americans with Disabilities Act.

## DISCUSSION

The principles governing this Court's consideration of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are well established. First, the Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in the plaintiff's favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). But, "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Defendants' motion to dismiss raises many different arguments. First, defendants argue that plaintiff's claims are time-barred in whole or in part. Next defendants argue that plaintiff's allegations fails to allege plausible grounds for relief. Lastly, defendants challenge the adequacy of service of process. I will consider these arguments in turn.

### *Time Limitations on Title VII Discrimination and Retaliation Claims*

A Title VII plaintiff must initially present his claim of discrimination by way of an administrative complaint to the CHRO or EEOC within 300 days of the discriminatory act that forms the basis for a complaint. *See McPherson v. New York City Dep't of Educ.*, 457 F. 3d 211, 213 (2d Cir. 2006); *Lewis v. Dep't of Corrections*, 355 F. Supp. 2d 607, 615–16 (D. Conn. 2005). Each discrete discriminatory or retaliatory act starts a new clock for the filing of administrative charges within 300 days to allege the unlawfulness of that act. *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F. 3d 130, 134 (2d Cir. 2003).

Plaintiff filed the relevant CHRO complaint on June 4, 2014, such that any alleged acts occurring prior to 300 days before (August 8, 2013), are not independently actionable for purposes of plaintiff's discrimination and retaliation charges as alleged in Counts One and Two. The same does not hold true for plaintiff's hostile work environment claim as alleged in Count Three, because a hostile-work-environment claim by its nature is ordinarily comprised of a series of separate acts that collectively constitute a single unlawful employment practice, and such claims are timely if any act that is part of the hostile work environment falls within the limitations period, even if some of the acts relied on as a basis for the claim are independently untimely. *See Elmenayer*, 318 F.3d at 134. Accordingly, any adverse acts that occurred prior to August 8, 2013, may be considered solely for purposes of plaintiff's hostile work environment claim as alleged in Count Three and otherwise only as background evidence to support any non-time-barred acts of discrimination or retaliation (and without prejudice to defendants' right to raise any objection at trial to this evidence pursuant to Fed. R. Evid. 403). *See, e.g.*, *Davidson v. LaGrange Fire Dist.*, 523 F. App'x. 838, 839 (2d Cir. 2013); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 205-08 (E.D.N.Y. 2014).

### *Time Limitation on Section 1983 Claims*

It is well established that a § 1983 action for a violation of the Constitution that is filed in a federal court in Connecticut is subject to a three-year statute of limitations. *See, e.g.*, *Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005). Plaintiff, however, contends that insofar as his § 1983 claims rest on a violation of the right to make and enforce contracts under 42 U.S.C. § 1981, he is entitled to the benefit of a four-year statute of limitations. *See, e.g.*, *Thomas v. Connecticut Dep't of Correction*, 2015 WL 3970833, at *3-5 (D. Conn. 2015); *Gilbert v. Dep't of Correction*, 2014 WL 6471415, at *4-5 (D. Conn. 2014).

At this preliminary stage, I cannot rule out the possibility that plaintiff may have a § 1983 claim that is sustainable on the grounds of conduct that may violate § 1981 (as distinct from other federal statutes or the Constitution). Accordingly, I conclude for now that a four-year statute of limitations should govern plaintiff's claims against Wells and Ruiz. For the § 1983 claims that are set forth in Counts Four through Six, all alleged discrete acts occurring prior to June 1, 2013, are time-barred. This ruling is without prejudice to defendants' arguing for a three-year limitations period if plaintiff's evidence does not sustain a claim under § 1981 that is of the type entitled to a four-year statute of limitations. *See, e.g.*, *Wright v. City of Ithaca*, 633 F. App'x 63, 65 (2d Cir. 2016).

*Race Discrimination*

Defendants move to dismiss Counts One and Four on the grounds that the complaint does not adequately allege facts to support plaintiff's claim that he was subject to an adverse employment action and that the circumstances give rise to an inference of discrimination. In order "to defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015). In equal fashion, "for a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" *Id.* at 88.

I will first consider the sufficiency of plaintiff's allegations about the Department and Wells. Plaintiff's allegation that Wells froze out plaintiff and refused to communicate mission

9

critical information to him states a plausible adverse employment action. By ceasing to communicate vital information to plaintiff and to allow plaintiff to perform his backup responsibilities, Wells arguably changed plaintiff's duties and the prestige of his position. This reshuffling in the hierarchy could plausibly amount to a "change in responsibilities so significant as to constitute a setback to the plaintiff's career," thereby constituting an adverse employment action. *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000); *Edwards v. Huntington Union Free Sch. Dist.*, 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013). Because plaintiff has sufficiently pleaded at least one plausible adverse employment action that may be attributed to Wells and the Department, I need not at this time consider whether plaintiff has plausibly alleged any other actionable adverse actions.

The complaint also pleads sufficient facts to give rise to an inference of discrimination by Wells and the Department. Plaintiff relies exclusively on the fact that he was treated differently from other employees in his work center to show circumstances giving rise to a discriminatory inference. "A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted). While many of the acts alleged by plaintiff "do not independently constitute adverse employment actions, [such actions] provide relevant background evidence by shedding light on Defendant's motivation and thus bolster his claim that Defendants treated him differently because of his [protected status]." *Vega*, 801 F.3d at 88.

Plaintiff has pleaded a number of examples of disparate treatment in the application of different workplace policies such as the procedures for the use of personal leave and the

privilege of listening to music in the work center. Wells enforced this harsher application against plaintiff, who is one of only two black employees supervised by Wells. While it is true that plaintiff does not allege that the other black employee was also treated less favorably, this does not render the inference of discrimination implausible. *See Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) ("[A]n employer may not escape liability for discriminating against a given employee on the basis of race simply because it can prove it treated other members of the employee's group favorably."). In addition, plaintiff has alleged that Wells sought to charge plaintiff personal leave time for a tardy arrival to work during a snow storm while not demanding the same from of a white employee supervised by Wells for the very same infraction. In view of the applicable standard at this stage of the litigation, these allegations "give plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84.

These allegations suffice at least for pleading purposes to plausibly state a claim a Title VII claim against the Department as well as a § 1983 claim against Wells. As to Ruiz, however, plaintiff has failed to plead sufficient facts to support even a minimal inference of discrimination that he acted against plaintiff for racially discriminatory reasons. Plaintiff's allegation that Ruiz denied plaintiff mentoring while other non-black employees received mentoring fails to support an inference of discrimination because there is no allegation Ruiz was in any way involved in the procurement of mentoring for those other employees.

In short, the complaint adequately alleges racial discrimination by the Department and Wells but does not adequately allege racial discrimination by Ruiz. Accordingly, I will deny the motion to dismiss Count One against the Department and Count Four against Wells, but I will grant the motion to dismiss Count Four against Ruiz.

*Retaliation*

For a retaliation claim, a plaintiff must plead facts that plausibly show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015). "As in discrimination claims, the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Vega*, 801 F.3d at 91.

Defendants argue that plaintiff did not engage in any protected activity because he did not explicitly allege in his complaints to HR or the union that he was the victim of unlawful discrimination. But when HR received plaintiff's complaint, it responded by contacting "Affirmative Action" regarding the matter. Then when plaintiff followed up with an in-person meeting with HR and Eric Lindquist shortly after lodging the complaint, plaintiff indicated that he thought he was being mistreated because of his race. This is not a circumstance where a defendant "could not reasonably have understood that [plaintiff] was complaining of conduct prohibited by Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (quotation marks omitted). Plaintiff has plausibly alleged that he engaged in protected activity.

Plaintiff has also plausibly alleged an adverse action. In the context of a retaliation claim, an adverse action is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). A citation for "unauthorized absence" and attendant wage garnishment could plausibly dissuade a reasonable employee from making a charge of discrimination.

12

In addition, plaintiff has plausibly alleged a causal connection between the adverse actions and the protected activity. He lodged a complaint with HR in September 2013, which was followed by the unauthorized absence citation and wage garnishment in February 2014. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (five month temporal nexus sufficient). Accordingly, I conclude plaintiff has pleaded a sufficient retaliation claim against the Department.

Notwithstanding my conclusion that plaintiff has plausibly alleged facts to support a retaliation claim, I conclude that Wells and Ruiz are entitled to qualified immunity. As defendants note, the law was not clearly established until September 2015 with the Second Circuit's decision in *Vega v. Hempstead Union Free Sch. District*, *supra*, that the Equal Protection Clause protects against a plaintiff being subject to retaliation because of a plaintiff's complaint about unlawful discriminatory activity. The Second Circuit in *Vega* conceded that there had "been considerable confusion surrounding the viability of retaliation claims under § 1983," and it resolved any uncertainty by affirmatively concluding "that retaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983." 801 F.3d at 80. Nor has plaintiff shown that the law is clearly established in this respect to the extent that plaintiff may base his claim on 42 U.S.C. § 1981 rather than the Equal Protection Clause. Because the law was not clearly established, Wells and Ruiz enjoy qualified immunity against plaintiff's § 1983 retaliation claims, which all arise from alleged acts before September 2015. *See Warburton v. John Jay Coll. of Criminal Justice of the City Univ. of New York*, 2016 WL 3748485, at *3 (S.D.N.Y. 2016), *aff'd sub nom. Warburton v. Hoffman*, 677 F. App'x 9 (2d Cir. 2017).

Plaintiff argues that he may maintain a retaliation claim against Ruiz and Wells for the post-*Vega* denial of mentorship in April 2017. But even assuming the denial of mentorship constitutes an adverse employment action for purposes of a retaliation claim, plaintiff has not plausibly alleged a causal connection between any protected activity and the denial of mentorship. Plaintiff was denied mentorship two and a half years after his protected activity of submitting his complaints to the union and HR, which is a far too attenuated temporal nexus, without more, to plausibly allege a causal connection. *See Harrison v. U.S. Postal Service*, 450 F. App'x. 38, 41 (2d Cir. 2011) (concluding a "temporal gap of almost two years between the date of this protected activity and the alleged retaliation is too great to give rise to an inference of causation").

In short, plaintiff has alleged a plausible claim against the Department for retaliation under Title VII, but both Wells and Ruiz are entitled to qualified immunity with respect to the retaliation claims alleged against them. Accordingly, I will deny defendants' motion as to Count Two but grant defendants' motion as to Count Five.

*Hostile Work Environment*

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class]." *Patane v. Clark*, 508 F. 3d 106, 113 (2d Cir. 2007) (*per curiam*). The same criteria govern a hostile work environment claim against an individual pursuant to 42 U.S.C. § 1983. *See Littlejohn*, 795 F.3d at 320-21.

Plaintiff's detailed allegations about how Wells froze out and marginalized plaintiff are sufficient at this initial pleading stage to allege a plausible claim for hostile work environment. The complaint alleges that Wells marginalized plaintiff, refused to communicate critical information to him, and relied instead on plaintiff's subordinate—all severely compromising plaintiff's status and ability to do his job. Whether these allegations are true, whether the adverse acts were sufficiently pervasive and prejudicial, or whether any adverse acts were for reasons other than plaintiff's race cannot be considered by me at this initial pleading stage. Accordingly, I will deny the motion to dismiss as to Count Three against the Department and as to Count Six against Wells.

On the other hand, plaintiff's allegations against Ruiz fail to establish his personal involvement in a hostile work environment. Plaintiff has not alleged that Ruiz played any role in any of Wells's conduct that is sufficient to state a claim for hostile work environment. Plaintiff's other allegations against Ruiz—*i.e.*, that he cited plaintiff for an unauthorized absence, gave him a negative evaluation, and denied him mentoring—do not rise to the level of severe or pervasive and cannot be said to have altered the conditions of plaintiff's employment for the worse. *See, e.g.*, *Palmer-Williams v. Yale New Haven Hosp.*, 2011 WL 1226022, at *9 (D. Conn. 2011) (being rude to plaintiff, subjecting her to negative evaluations, and accusing her once of misconduct insufficient to support a hostile work environment claim), *aff'd*, 477 F. App'x 855 (2d Cir. 2012). Accordingly, I will grant the motion to dismiss Count Six against Ruiz.

*Failure to Serve Process*

Defendants Wells and Ruiz also move to dismiss Counts Four through Six against the individual defendants under Rule 12(b)(2) & (5) on grounds of insufficient and untimely service

of process. Because I have already granted dismissal of all of plaintiff's claims against Ruiz, I need only consider this issue as to Wells.

For service of process to be effective and timely, a plaintiff must ensure that the summons and complaint are served upon a defendant within 90 days after filing a complaint. *See* Fed. R. Civ. P. 4(c)(1) & (m); Conn. Gen. Stat. § 52–57(a) (providing that an individual defendant must be served process, including the complaint, in person or at usual place of abode). Because plaintiff filed his complaint on June 1, 2017, *see* Doc. #1, plaintiff was required to ensure process was served by August 30, 2017.

Plaintiff's diligence in ensuring proper and timely service on defendants has been woefully inadequate. Counsel for defendants placed plaintiff on notice of his failure to serve Wells and Ruiz in their individual capacities on August 9, 2017—a full 21 days before the 90 day time for service lapsed on August 30. The deadline came and went, and on September 5, 2017, plaintiff filed his opposition in which he argued that he was entitled to more time to serve process because he had consented to defendants' motion for extension of time to respond to the complaint and because a Rule 26(f) meeting had not yet taken place. Doc. #20 at 18. At oral argument on October 23, there was still no evidence that process had been served on either of the individual defendants. At the hearing, I stated my intention to allow plaintiff a "little extra time" to serve Ruiz and Wells. Doc. #33 at 2. Plaintiff's counsel responded that Ruiz had been served, but Wells had not. *Id.* at 2-3. Plaintiff delayed until December 20 to file proof of service on Ruiz, which had apparently been effected on October 3. *See* Doc. #34. Plaintiff filed proof of service on Wells on December 23. Doc. #36. The affidavit of service of process in both instances makes clear, however, that the individual defendants were not served with a complaint as required by

16

Rule 4 and Connecticut law. Docs. # 34, 36. Therefore, at this time, plaintiff has still not properly served Wells.

While defendants' initial motion to dismiss was still *sub judice*, defendants renewed their motion to dismiss under Rule 12(b)(2) & (5), arguing that Wells is now entitled to a dismissal *with prejudice* because plaintiff "has failed to properly serve the individual [d]efendants for more than six months," and "there is no good cause to extend" the time for service of process. Doc. #35-1 at 8-9.

Plaintiff has, indeed, failed to show good cause for an extension of the time to serve process on Wells. This, however, does not entitle defendants to a dismissal with prejudice. That would be contrary to the plain language of Rule 4(m), which states that when a defendant is not served within 90 days, the court "must dismiss the action *without prejudice* against that defendant or order that service be made within a specified time." (emphasis added). The Second Circuit has construed the rule to permit district courts to exercise their discretion to extend the time for service of process even in the absence of a showing of good cause. *See Zapata v. City of New York*, 502 F.3d 192, 193 (2d Cir. 2007); *John v. City of Bridgeport*, 309 F.R.D. 149, 155-56 (D. Conn. 2015).

Courts generally look to four factors in determining whether to grant an extension in its discretion: "whether 1) the statute of limitations would prevent plaintiff from refiling, effectively converting the dismissal to dismissal with prejudice; 2) the defendant had actual notice of the claims prior to being served; 3) the defendant tried to conceal the defect in service; and 4) the defendant will be prejudiced if an extension is granted." *John*, 309 F.R.D. at 155. While it is clear that defendant did not try to conceal the defect in service, I conclude that the three other factors weigh in favor of extending the time for service. Plaintiff shall *properly* serve process on

17

Wells and file such proof of service within 30 days by February 5, 2018. If plaintiff does not timely do so, the Court will dismiss plaintiff's action against Wells.

### *Americans with Disabilities Act*

Finally, defendants argue plaintiff's Americans with Disabilities Act ("ADA") is barred by the Eleventh Amendment. Plaintiff has not responded to this argument, so this claim is therefore deemed abandoned. In any event, because plaintiff's employer is a state agency, his ADA claim is barred by the Eleventh Amendment. *See Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001); *Darcy v. Lippman*, 356 F. App'x 434, 436 (2d Cir. 2009). Accordingly, defendants' motion to dismiss Count Seven is granted.

## CONCLUSION

Defendants' motion to dismiss (Doc. #15) is GRANTED in part and DENIED in part. The following claims are dismissed: all of plaintiff's claims against Ruiz (Counts Four, Five, and Six), plaintiff's retaliation claim against Wells (Count Five), and plaintiff's ADA claim (Count Seven) against the Department. The case will otherwise proceed with respect to plaintiff's Title VII claims against the Department (Counts One through Three), and plaintiff's § 1983 discrimination and hostile work environment claims against Wells (Counts Four and Six), provided as to the claims against Wells that plaintiff files a proper proof of service on Wells by February 5, 2018. Defendants' renewed motion to dismiss (Doc. #35) is DENIED.

It is so ordered.

Dated at New Haven this 5th day of January 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge